UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARCELLOUS WALKER,

        Plaintiff,

  v.                                                         Case No. 06-C-839

HELENE NELSON, et al.,

        Defendants.

**ORDER**

Plaintiff, who is serving a civil commitment under at the Wisconsin Resource Center under Wis. Stat. Ch. 980 (Sexually Violent Person Commitments), has filed an action under 42 U.S.C. § 1983. Ordinarily, a plaintiff must pay a statutory filing fee of $350 to bring an action in federal court. 28 U.S.C. § 1914(a). Plaintiff, however, has requested leave to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915.

Section 1915 is meant to ensure indigent litigants meaningful access to federal courts. *Nietzke v. Williams*, 490 U.S. 319, 324 (1989). An indigent plaintiff may commence a federal court action, without paying required costs and fees, upon submission of an affidavit asserting inability "to pay such fees or give security therefor" and stating "the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

Plaintiff filed the required affidavit of indigence. Upon review of that affidavit, it appears that plaintiff could not pay any portion of the filing fee. And because plaintiff is under a civil commitment, as opposed to serving a sentence for a crime, he is not a prisoner within the meaning

of the Prison Litigation Reform Act and 28 U.S.C.§ 1915's provisions requiring the assessment and collection of the full filing fee over time do not apply. *West v. Macht*, 986 F. Supp. 1141, 1142 (W.D. Wis. 1997). Thus, in forma pauperis status will be granted.

Though inmates who are involuntarily committed, rather than convicted, are not deemed prisoners under the Prison Litigation Reform Act, I nevertheless maintain a duty to "screen" all complaints to ensure that they comply with the Federal Rules of Civil Procedure and that they state at least plausible claims on which relief may be granted.

Plaintiff's complaint is based on two incidents that occurred in July 2006. On July 17, plaintiff was assisting in serving food at a picnic. Another inmate approached him seeking a second hamburger, and plaintiff declined the request. After the plaintiff returned to his cell, the other individual attacked plaintiff by punching him in the back of the head. Staff who were in the vicinity did nothing but yell "stop! stop!" Plaintiff ended up very close to staff members, who did nothing while plaintiff was "stomped" in the head and beaten. (Compl. ¶¶ 29-30.) Plaintiff was then placed in seclusion and he "reluctantly" returned to his unit the next day. He asserts that the staff psychologist warned him that he might have to stay in isolation for an indefinite period if they believed he was in danger. Because he did not like that option, he agreed that everything "would be okay" and was thus allowed to return to his cell. (Compl. ¶ 34.) Everything was not okay, however. The next day, while watching television, plaintiff was punched in the face by another inmate. Again, staff in the area yelled "stop!" but failed to intervene immediately and only blocked the assailant when the plaintiff was trying to escape. (Compl. ¶ 46.)

2

Case 1:06-cv-00839-WCG   Filed 09/11/06   Page 2 of 5   Document 3

The Seventh Circuit has recently had occasion to summarize the scope of an institution's duties to protect inmates from other inmates:

> "[P]rison officials have a duty ⋯ to protect prisoners from violence at the hands of other prisoners." "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." In order to state a claim under the Eighth Amendment for failure to protect, a plaintiff bears the burden of establishing prison officials were "deliberately indifferent" to the fact that an inmate was in serious peril of being harmed. In other words, in order to prevail, [the inmate] must demonstrate that he " 'was at serious risk of being harmed [and the guards] decided not to do anything to prevent that harm from occurring even though [they] could have easily done so.' " However, "conduct that simply amounts to 'mere negligence or inadvertence' is insufficient to justify the imposition of liability." Instead, "[i]n order to infer callous indifference when an official fails to protect a prisoner from the risk of attack, there must be a 'strong likelihood' rather than a 'mere possibility' that violence will occur."

*Pinkston v. Madry,* 440 F.3d 879, 889 (7th Cir. 2006) (citations omitted).

Here, the complaint alleges that the WRC staff's reaction to the assaults was lackadaisical, with various staff members doing little to intervene while the plaintiff was pummeled. Construed liberally, the complaint suggests more than ineptitude or "mere negligence" on the part of the staff who witnessed the attacks and failed to intervene. Accordingly, plaintiff's claims of deliberate indifference will survive.

The plaintiff also avers that he told a unit manager that "angry minorities" in both units of the WRC might pose a threat of danger to him. (Compl. ¶ 36.) He did not, however, identify any specific person who might want to harm him. Moreover, when the staff tried to insulate him he chose to return to his unit. These allegations do not support an inference that any of the defendants knew in advance that there was a "strong likelihood" that violence would occur–by his own admission, the plaintiff believed there was an unspecific "mere possibility" that he would be

3

harmed. *Pinkston,* 440 F.3d at 889. A claim for deliberate indifference requires that a defendant subjectively knew that the inmate was in serious danger. An allegation of a vague threat, coupled with a willingness to return to one's cell, does not reach that level. As the Eleventh Circuit found in an unpublished case:

> Here, we readily conclude the district court did not err by dismissing Murphy's failure-to-protect charge for failure to state a claim. While Murphy alleged he requested protection from certain inmates and that the defendants knew about his request for protection from his original cellmate, prisoner Neisler, he did not allege that the defendants had notice that he was in danger from Thomas, the inmate who attacked him. Simply put, the allegations of Murphy's complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack by Thomas. Put another way, because Murphy alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from Thomas and failed to take protective measures, his claim fails.

*Murphy v. Turpin,* 159 Fed. Appx. 945, 948, 2005 WL 3455813, *3 (11th Cir. 2005). This makes it clear that a vague warning to staff will not suffice to show that staff members harbored knowledge of a substantial risk of serious harm. Accordingly, even construing the complaint liberally I conclude that it fails to allege that any of the defendants knew there was a substantial risk of injury or serious bodily harm. Thus, to the extent any claims are based on a failure to protect the plaintiff *in advance* of the attacks (as opposed to claims against defendants who witnessed the attacks) they are dismissed. These would seem to include all claims against defendant Scheidel, the staff psychologist. This dismissal also applies to the claim (Compl. ¶ 55) that staff somehow coerced him into returning to his cell despite the danger. Because the complaint sets forth no claim that staff knew of a substantial danger, it fails to state a claim.

**IT IS THEREFORE ORDERED** that plaintiff's request to proceed in forma pauperis is granted.

4

**IT IS FURTHER ORDERED** that any claims against defendant Scheidel are dismissed.

**IT IS FURTHER ORDERED,** pursuant to Fed. R. Civ. P. 4(c)(2), that the U.S. Marshals Service shall serve a copy of the complaint, a waiver of service form and/or the summons, and this order upon defendants (excepting Scheidel). Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(b). The current fee for waiver-of-service packages is $8 per item. The full fee schedule is provided in Revision to United States Marshals Service Fees for Services, 65 Fed. Reg. 47,859, at 47,862 (Aug. 4, 2000) (to be codified at 28 C.F.R. §§ 0.114(a)(2), (a)(3)). Although Congress requires the court to order service by the U.S. Marshals Service, the U.S. Marshals Service fees are not considered court fees, and Congress has not made any provision for these fees to be waived by the court.

Plaintiff must provide defendants or their counsel with copies of all future motions or papers filed by the plaintiff in this action.

Dated this   9th   day of September, 2006.

> s/ William C. Griesbach
> William C. Griesbach
> United States District Judge